IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 9, 2004 Session

## MITCHELL LLOYD MAGILL v. MARY R. MAGILL

**Appeal from the General Sessions Court for Roane County**
**No. 5460A      Dennis W. Humphrey, Judge**

**No. E2003-02209-COA-R3-CV  - FILED AUGUST 31, 2004**

This is a divorce case.  The trial court granted Mary R. MaGill ("Wife") a divorce based upon the inappropriate marital conduct of her spouse, Mitchell Lloyd Magill ("Husband"); awarded Wife rehabilitative alimony of $600 per month for four years, plus attorney's fees of $600; and divided the parties' marital property.  Husband appeals the trial court's award of rehabilitative alimony.  In a separate issue, Wife contends that the trial court failed to divide marital assets in the form of two businesses, *i.e.*, MaGill Electric and C&M Lounge.  She also seeks an award of damages for a frivolous appeal.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Scarlett Beaty Latham, Albany, Kentucky, for the appellant, Mitchell Lloyd MaGill.

Tom McFarland, Kingston, Tennessee, for the appellee, Mary R. MaGill.

**OPINION**

I.

The trial court dissolved a marriage of 17 years.  At the time of their divorce, Husband was 47 years old, and Wife was 42.  No children were born to their union.

This matter was initially heard on October 3, 2002, and an order was thereafter entered granting Wife an absolute divorce.  The order reserved all other issues.  A hearing on the division of the parties' property and alimony was held on July 31, 2003.  Apparently, the parties did not have a court reporter present at this latter hearing; as a consequence of this, there is no verbatim transcript of the evidence.  Husband, instead, filed an amended statement of the evidence along with exhibits.

Wife does not dispute the accuracy of the statement. The parties and Wife's daughter of an earlier marriage were the only witnesses in this case.

Wife testified that Husband earned "over $50,000 per year" and that he worked for "cash money", pocketing "thousands" of dollars that he failed to "report[] to the IRS." Wife stated that she was employed at Harriman Hospital earning $6.47 per hour.

According to Wife, during the parties' marriage, she made deposits of $3,000 to $4,000 per month for C&M Lounge, which is apparently a bar-type establishment. Wife also tendered several exhibits that were received into evidence. These exhibits – apparently reflecting various business transactions – were offered in an attempt to prove that Husband's sole proprietorship, MaGill Electric, earned more money than reported on the parties' tax returns. In her affidavit of assets, Wife listed the current revenues of MaGill Electric as $50,000 per year and the current revenues of C&M Lounge as $25,000 per year. Husband listed the value of MaGill Electric as "[u]nknown" and did not list a value for C&M Lounge.

Husband disagreed with Wife's testimony regarding his income; he produced joint tax returns in order to support his claim. Husband also testified that C&M Lounge never made "much money". Husband stated that "the tax returns accurately reflected his net earnings after costs of goods, business expenses and other allowable deductions were taken into consideration."

The trial court entered a final judgment on August 11, 2003. In its final judgment, the trial court made the following findings with respect to alimony.

> At the time of the divorce, [Wife] testified, she earned at the hospital $5.48 an hour and now earns $6.47. She has a high school education and is 42.
>
> * * *
>
> [Husband] maintained [C&M Lounge] operated at a loss and denied concealing income. . . .
>
> [Husband] also denied the income attributed to him during-cross examination, which revealed a cash flow of several hundred thousand dollars each year. He explained that the expense of materials were depicted in the records obtained from his computer and submitted during the hearing. He denied concealing income from that business as well.
>
> [Wife], however, maintained in her testimony that at the bar she often made the deposits of $3,000.00 to $4,000.00 each month, and that as

an electrician, [Husband] would often accept cash that would not be reported as income. [Husband's] actual income is in dispute.

\* \* \*

The Court resolves these conflicts in favor of [Wife] and finds [Husband's] testimony to not be credible.

\* \* \*

In reviewing the wife's Affidavit of Expenses, the Court finds her monthly expenses and her income to be an accurate representation of her financial state and agrees that an ward of alimony and an award of attorney's fee[s] to be appropriate. . . .

The trial court ordered Husband to pay Wife rehabilitative alimony in the amount of $600 per month for four years and awarded wife $600 in attorney's fees. This appeal followed.

## II.

Our review of this non-jury case is *de novo* upon the record of the proceedings below with a presumption of correctness as to the trial court's factual findings, "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). The trial court's conclusions of law are not accorded the same deference. **Brumit v. Brumit**, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997).

## III.

Tenn. Code Ann. § 36-5-101(d)(1)(E)(i)-(xii) (Supp. 2003), sets forth the factors to be considered by a court in addressing the issue of alimony:

(i) The relative earning capacity, obligations, needs, and financial resources of each party including income from pension, profit sharing or retirement plans and all other sources;

(ii) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(iii) The duration of the marriage;
(iv) The age and mental condition of each party;
(v) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(vi) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(vii) The separate assets of each party, both real and personal, tangible and intangible;

(viii) The provisions made with regard to the marital property as defined in § 36-4-121;

(ix) The standard of living of the parties established during the marriage;

(x) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(xi) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(xii) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

IV.

Husband argues that the trial court erred in awarding rehabilitative alimony to Wife "solely on the basis of her claim that the Husband has unreported income." Husband asserts that the trial court failed to find that "Wife is capable of or in need of rehabilitation" and failed to "consider the other factors set forth in Tenn. Code Ann. [§] 36-5-101 in determining whether alimony was appropriate in this case."

Because the amount of alimony to be awarded is within the sound discretion of the trial court in view of the particular circumstances of the case, appellate courts will not alter such awards absent an abuse of discretion. *Lindsey v. Lindsey*, 976 S.W.2d 175, 180 (Tenn. Ct. App. 1997). In determining the propriety, nature, and amount of an alimony award, courts are to consider the statutory factors set forth in Tenn. Code Ann.§ 36-5- 101(d)(1)(E)(i)-(xii). "[T]here is no absolute formula for determining the amount of alimony." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995). The two most important factors in setting the amount of an alimony award are need and the ability to pay, with need being "the single most important factor." *Id.* (quoting *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989) (citations omitted)).

Tenn. Code Ann. § 36-5-101 clearly reflects a legislative preference for an award of rehabilitative alimony. *See* Tenn. Code Ann. § 36-5-101(d)(1)(C) (Supp. 2003).[1] Under this statute, rehabilitation

> means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

It is clear that "[t]he prior concept of alimony as lifelong support enabling the disadvantaged spouse to maintain the standard of living established during the marriage has been superseded by the legislature's establishment of a preference for rehabilitative alimony." ***Robertson v. Robertson***, 76 S.W.3d 337, 340 (Tenn. 2002) (citations omitted).

With respect to the propriety of the award of rehabilitative alimony, we are mindful of the two critical factors–need and ability to pay. *See Aaron*, 909 S.W.2d at 410. Our review of the record indicates that Wife is age 42, has a high school education; and earns $6.47 per hour as an employee of Harriman Hospital. Husband's income was in dispute at the trial below. Wife claimed that husband would often accept–and not report–cash for his work as an electrician and that she made deposits of up to $4,000 each month for the bar. Husband denied concealing income from his business and denied that he had an annual cash flow of several hundred thousand dollars. The trial court "resolve[d] these conflicts in favor of [Wife] and [found] [Husband's] testimony to not be credible." Generally speaking, the issue of witness credibility is for the trial court. *See **Galbreath v. Harris***, 811 S.W.2d 88, 91 (Tenn. Ct. App. 1990).

It is clear that Wife is economically disadvantaged *vis-a-vis* Husband. The trial court, in an effort to rehabilitate Wife, ordered Husband to pay $600 per month for 48 months. Based upon Wife's need, Husband's ability to pay, and the relevant factors under Tenn. Code Ann. § 36-5-101(d)(1)(E)(i)-(xii), we cannot say that the evidence preponderates against the trial court's finding that Wife could be rehabilitated. Accordingly, we do not find that the trial court abused its discretion in making this award.

---

[1]Tenn. Code Ann. § 36-5-101(d)(1)(C), states, in pertinent part, that

> [i]t is the intent of the general assembly that a spouse who is economically disadvantaged relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance.

V.

Wife argues that the trial court held that MaGill Electric and C & M Lounge are marital property, but failed to divide the parties' interests in the businesses. As a result, Wife maintains that both businesses are "undistributed" martial assets.

Property may be equitably divided and distributed between the parties once it is properly classified as marital. *See* Tenn. Code Ann. § 36-4-121(a)(1) (Supp. 2003). "Trial courts have wide latitude in fashioning an equitable division of marital property." **Brown v. Brown**, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994) (citation omitted). Such a division is to be effected upon consideration of the statutory factors found in Tenn. Code Ann. § 36-4-121(c) (Supp. 2003). However,

> an equitable property division is not necessarily an equal one. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case.

**Batson v. Batson**, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). It is not necessary that both parties receive a share of each piece of property. **Thompson v. Thompson**, 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990). Appellate courts are to defer to a trial court's division of marital property unless the trial court's decision is inconsistent with the statutory factors or is unsupported by the preponderance of the evidence. **Brown**, 913 S.W.2d at 168.

The record in this case is devoid of any evidence as to the value of MaGill Electric and C & M Lounge. Wife's affidavit simply lists the annual gross income of each business without providing further evidence as to their value, if any, as a going concern. Both businesses appear to be a sole proprietorship which continued to be operated by Husband following the parties' separation. In the absence of evidence of tangible assets or other assets of value, we find no error in the failure of the trial court to specifically address these two businesses which appear, essentially, to be nothing more than the person of Husband.

VI.

Wife maintains that Husband's appeal is frivolous and that she should be awarded damages. We find Wife's argument to be without merit and deny her claim for damages.

VII.

The judgment of the trial court is affirmed. This case is remanded to the trial court for enforcement of the trial court's judgment and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, Mitchell Lloyd MaGill.

_____
CHARLES D. SUSANO, JR., JUDGE